Maradean **BARCUME,** Chari Bortner, Barbara Burnett, Ann Drennan, Lee Ann Gasper, Connie Martin, Maureen McIntyre, Dawn Skidmore, Jacqueline Sova, Kristine Surdu, Ann Talt–Harris, Debra Williams, and Michelle Marshke, Plaintiffs,

v.

**THE CITY OF FLINT, a municipal corporation, Defendant.**

No. Civ. 84–48066.

United States District Court, E.D. Michigan, Southern Division.

Jan. 29, 2001.

Susan Winshall, Susan Winshall & Associates, Beverly Hills, MI, H. David Kelly, Jr., Sterling Heights, Michigan, Rachel K. Eickemeyer, West Bloomfield, MI, for Plaintiffs.

Terrence J. Miglio, Linda M. Foster, Keller, Thomba, Schwarze, Schwarze, Du-

Bay & Katz, P.C., Detroit, MI, Lawrence J. Murphy, Kimberley A. Clarke, Varnum, Riddering, Schmidt & Howlett, L.L.P., Kalamazoo, MI, Karen McDonald–Lopez, City of Flint, Flint, MI, for Defendant.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S CROSS–MOTION TO VACATE ARBITRATION AWARD AND GRANTING PLAINTIFFS' APPLICATION FOR ENTRY OF JUDGMENT

GADOLA, District Judge.

Before the Court are Plaintiffs' Application for Entry of Judgment and Defendant City of Flint's Cross–Motion to Vacate Arbitration Award. For reasons set forth below, this Court grants Plaintiffs' Application for Entry of Judgment and denies Defendant's Cross–Motion to Vacate Arbitration Award.

### Brief Summary of Factual and Procedural Background

On January 30, 1984, Plaintiffs Maradean Barcume, Chari Bortner, Barbara Burnett, Ann Drennan, Lee Ann Gasper, Connie Martin, Maureen McIntyre, Dawn Skidmore, Jacqueline Sova, Kristine Surdu, Ann Talt–Harris, and Debra Williams filed their Complaint in this civil action against Defendants City of Flint and Flint Police Officers Association ("FPOA"). On October 29, 1984, the Complaint was amended to add Michelle Marshke as a Plaintiff. Plaintiffs are or were police officers with Defendant City of Flint.

In their Complaint, Plaintiffs asserted five claims for relief: Defendant City of Flint discriminated against Plaintiffs in violation of 42 U.S.C. § 1983 ("First Cause of Action"); Defendant FPOA breached its duty of fair representation in violation of Section 301 of the Labor Management Relations Act (codified at 29 U.S.C. § 185) ("Second Cause of Action"); Defendants conspired to violate Plaintiffs' civil rights in violation of 42 U.S.C. § 1985(3) ("Third Cause of Action"); Defendant City of Flint discriminated against Plaintiffs in violation

of the Elliott–Larsen Civil Rights Act, M.C.L. §§ 37.2101, *et seq.* ("Fourth Cause of Action"); and Defendant FPOA discriminated against Plaintiffs in violation of the Elliott–Larsen Civil Rights Act, M.C.L. §§ 37.2101, *et seq.* ("Fifth Cause of Action"). Judge Stewart A. Newblatt, to whom this case originally was assigned, exercised the Court's supplemental jurisdiction over the state law claims.

In 1994, after ten years of litigation and on the eve of trial, the parties agreed to submit the case to arbitration. According to the undated Agreement to Binding Arbitration (the "Agreement"),[1] the "arbitration shall be final and binding upon all parties to the Agreement" and "[t]he parties waive their respective rights to appeal any, all and every single issue arising out of this lawsuit or arising out of the arbitration proceeding." (Agreement, ¶¶ 2, 3.) The Agreement provides that, "[a]ny award of monetary damages shall be paid as follows: fifty percent (50%) no later than thirty (30) days after the arbitration award is rendered; and the remaining fifty percent (50%) paid within thirty (30) days of the beginning of the subsequent fiscal year." (*Id.* ¶ 4.)

Furthermore, the parties agreed that "[t]he District Court shall retain jurisdiction of this matter until the commencement of the arbitration, and subsequently for the sole purposes of compelling attendance of witnesses and/or production of documents at the arbitration hearing, and for the enforcement of any award rendered by the arbitrators …." (*Id.* ¶ 11.) Finally, the Agreement provided that "[t]he parties agree that the Court shall dismiss this matter, with prejudice, and without costs and/or attorney fees to either party, subject to the Court's retention of jurisdiction as set forth in ¶ 11 above." (*Id.* ¶ 12.) The Agreement was signed by Susan Winshall, Attorney for Plaintiffs; Michael Joliat, City Attorney; and Donna R. Nuyen, Attorney for Defendant City of Flint.

Pursuant to the parties' Agreement, Judge Newblatt dismissed this civil action with prejudice and without costs on August 7, 1995. Defendant FPOA was dismissed by separate order on that same date and was not a party to the arbitration. Only Defendant City of Flint (hereinafter "Defendant") remained.

The Agreement provides that Plaintiffs and Defendant each would select an Arbitrator and then those two Arbitrators would select a third Arbitrator. (*See id.* ¶ 1.) Plaintiffs selected Lynn H. Shecter, of Roy, Shecter & Vocht, P.C. Defendant selected Kendall B. Williams, presently of The Williams Firm. Those two Arbitrators selected Robert B. Webster, a former Judge of the Circuit Court for the County of Oakland. The parties each agreed to pay 50% of each Arbitrators' fees, although the Arbitrators were given authority to modify that burden of costs "if they determine that either party failed to prosecute or to defend the matter in an expeditious manner." (*Id.* ¶ 9.)

Soon after Defendant selected Arbitrator Williams, Plaintiffs moved the Court to disqualify him as an Arbitrator because he had served as Defendant's City Attorney and had some ongoing business relationship with Defendant.[2] In a December 16, 1994 Order, Judge Newblatt denied without prejudice Plaintiffs' motion to disqualify Arbitrator Williams because the Agreement did not grant the Court jurisdiction over such a question. Judge Newblatt agreed with Defendant that,

> retention of jurisdiction was only for the purpose of compelling the arbitration process and facilitating discovery in preparation for, and production of witnesses and evidence during, the arbitration. In addition, the Court has juris-

---

1. Although the Agreement is undated, it was filed with the Court on October 21, 1994 [Docket Entry 467].

2. Plaintiffs' motion was either oral or in correspondence because it was not filed with the Court; only Defendant's response was filed [Docket Entry 465].

diction over enforcement of the terms of the arbitration agreement, none of which places any restrictions or qualifications upon the party-selected arbitrators except that they shall be attorneys experienced in the practice of employment law. Judge Newblatt concluded that, "the only relief the Court can provide would be to vacate the arbitration award should the alleged conflict of interest taint the proceedings and prejudice the outcome."

Throughout the subsequent five years of arbitration, Plaintiffs' counsel had several *ex parte* communications with Arbitrator Shecter. (*See* Defs. Reply Br.Exs.; Shecter Aff. ¶¶ 8, 16, 19.) Plaintiffs' counsel repeatedly complained to Arbitrator Shecter about the slow pace of the Arbitrators' deliberations, and those complaints grew into repeated threats of litigation against the arbitration panel. (*See* Shecter Aff. ¶¶ 5, 8.) According to Arbitrator Shecter, however, her conversations with Plaintiffs' counsel were authorized by the other Arbitrators, did not relate to the substance of the deliberations, and were designed to salvage the arbitration proceedings from potential litigation. (*Id.* ¶¶ 16, 19.)

Because Plaintiffs were behind on their payments of the Arbitrators' fees, they owed Arbitrator Shecter their 50% of her fees for some time. Defendant requested that Arbitrator Shecter disclose her billing records and Plaintiffs' payments, but she refused to do so. On July 27, 2000, Arbitrator Shecter wrote to Defendant's counsel Terrence J. Miglio that,

> There has been no mystery concerning the billing and payment in this case. Indeed, Ms. Winshall recently sent payments to the arbitrators with a cover letter to the parties setting forth the amounts, and bringing all amounts current. I am sure you noted, Mr. Miglio, that Roy, Shecter & Vocht, P.C. did not

receive the lion's share of the payments. Thus, too, Mr. Miglio, if you wish to know how much Roy, Shecter & Vocht, P.C. received from Ms. Winshall, you will know that amount when you ask your client how much it paid this law firm. I trust this ends the invective. *I do not care to receive any letters from any one threatening, attempting to intimidate, or impugning the integrity of participants in this case.*

(Def.Ex. F (emphasis added).) [3]

Arbitrator Williams had his own billing problems. Some of Arbitrator Williams' invoices were paid entirely by Defendant which should have paid only 50% under the Agreement. After Plaintiffs' counsel pointed out the erroneous payments to Defendant's counsel, Arbitrator Williams wrote to Plaintiffs' counsel on July 26, 2000 that "my firm will issue a reimbursement payment to the City of Flint for the amount of any overpayment *upon the payment of fees by your clients.*" (Pls.Ex. 5C (emphasis added).)

On or about August 8, 2000, Defendant moved the arbitration panel for a new trial, asserting that a new trial was warranted "due to the Plaintiffs' pervasive and continuing intimidation and threats against the Arbitrators in this matter." On August 31, 2000, the Arbitrators unanimously denied this motion, concluding that Defendant's allegations were "without merit."

On August 31, 2000, the Arbitrators issued an Arbitration Award in favor of Plaintiffs Maradean Barcume, Ann Drennan, Lee Ann Gasper, Michelle Marshke, Connie Martin, Maureen McIntyre, Dawn Skidmore, Kristine Surdu, and Ann Talt–Harris and against Defendant for the combined sum of $2,253,270.00. The Arbitrators denied the claims of Plaintiffs Chari Bortner and Barbara Burnett. Finally, the Arbitrators reaffirmed the dismissal of

---

**3.** In its filings, Defendant cites the final sentence of this quotation in support of its claim that Plaintiffs' counsel allegedly threatened, attempted to intimidate, and impugned the integrity of the arbitrators. When read in context, however, this quotation actually supports the proposition that it was Defendant's counsel who threatened, attempted to intimidate, and impugned the integrity of the arbitrators.

pregnancy claims of Plaintiffs Chari Bortner, Barbara Burnett, and Maureen McIntyre.

On September 11, 2000, Plaintiffs filed their Application for Entry of Judgment. On September 22, 2000, Defendant filed a Cross–Motion to Vacate Arbitration Award. Plaintiffs' Application and Defendant's Cross–Motion were referred to this Court because Judge Newblatt had retired.

On October 13, 2000, this Court held a hearing on Plaintiffs' Application and Defendant's Cross–Motion. At that hearing, Plaintiffs' counsel, Susan Winshall, argued extensively that Arbitrator Williams had "unclean hands" from the very beginning of the arbitration proceedings. (*See* Hr'g Tr. at 22–23, 26–33, 36–37.) Plaintiffs' counsel cited his having served as Defendant's City Attorney and Defendant having paid 100% of some of his fees as an Arbitrator. Plaintiffs' counsel so persisted with accusations of improprieties by Arbitrator Williams that it appeared to this Court that Plaintiffs were joining in Defendant's Cross–Motion to Vacate. (*See id.* at 33–35.) Nevertheless, Plaintiffs' counsel stated that Plaintiffs agreed to be bound by the Arbitration Award and did not want it vacated. At the parties' request, the Court permitted the parties to file supplemental briefs.

Among Plaintiffs' supplemental submissions was an affidavit from Defendant's Finance Director, Matthew A. Grady III, dated September 18, 2000 and filed in a separate civil action,[4] showing that Defendant will have difficulty paying the Arbitration Award this fiscal year. Finance Director Grady stated that,

> The City has ... liabilities that it must be prepared to pay. There was a suit brought by 13 City of Flint police women alleging sexual discrimination that has resulted in a binding arbitration award in the amount of $1.1 million which is due in this fiscal year. The City

is contesting the validity of this arbitration and its duty to pay this amount. *There is no current appropriation in the budget to pay that award.*

(Pls.Supp.Br.Ex. 2 ¶ 8 (emphasis added).) According to Finance Director Grady, if Defendant can delay paying liabilities such as the Arbitration Award in the instant case until after the beginning of the fiscal year starting July 1, 2001, then Defendant can finance the cost of its liabilities by increasing taxes rather than by issuing bonds at above-market interest rates because of Defendant's poor bond rating. (*See id.* ¶¶ 9, 10.)

Also among Plaintiffs' supplemental submissions was a Complaint filed by Defendant herein in the Circuit Court for the County of Genesee on October 19, 2000 against Plaintiffs herein, *City of Flint v. Barcume*, No. 00–68834–CZ. In that suit, Defendant asserted two claims for relief: "vacation of arbitration award" (Count I) and "breach of arbitration agreement" (Count II). In Count I, Defendant alleged that Plaintiffs and their attorneys "improperly attempted to procure a favorable arbitration award by engaging in acts of misconduct" including *ex parte* communications with Arbitrator Shecter, threatening and intimidating the Arbitration Panel, and thwarting Defendant's attempts to investigate Arbitrator Shecter's billing records. In Count II, Defendant alleged that Plaintiffs breached the Agreement to Binding Arbitration by engaging in *ex parte* communications with Arbitrator Shecter, threatening and intimidating the Arbitration Panel, and thwarting Defendant's attempts to investigate Arbitrator Shecter's billing records. That case is pending before Judge Robert M. Ransom of the Circuit Court for the· County of Genesee.

**Discussion**

In its Cross–Motion to Vacate, Defendant asserts two general arguments: (1)

---

4. This affidavit was prepared for and filed in an unrelated civil action in this judicial district before Judge Patrick J. Duggan, *Childress v. Williams*, No. 97–72335.

the Court lacks subject matter jurisdiction to adjudicate Plaintiffs' Application for Entry of Judgment, and (2) the Court should vacate the Arbitration Award because it is tainted by Plaintiffs' counsel's undue means and Arbitrator Shecter's evident partiality. This Court will address these claims in separate sections below.

### 1. Whether the Court lacks subject matter jurisdiction

Defendant argues that this Court lacks subject matter jurisdiction to entertain Plaintiffs' Application for Entry of Judgment because this civil action was dismissed by Judge Newblatt on August 7, 1995.

■ In order for Defendant to challenge the Arbitration Award under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, when there is no pending proceeding in the district court—as Defendant seeks to do in the alternative—Defendant must establish subject matter jurisdiction. *See Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir.2000). Here, Plaintiffs arguably also should be required to show that this Court has subject matter jurisdiction because they seek the entry of a judgment that gives effect to the Arbitration Award.

In any event, while the FAA "does not independently confer subject matter jurisdiction on the district court," *Green*, 200 F.3d at 973, there is no doubt that this Court has subject matter jurisdiction to enter a judgment in this case. In *Green*, the United States Court of Appeals for the Sixth Circuit concluded that the district court had subject matter jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, in the underlying civil action. *Id.* Similarly, the Court has subject matter jurisdiction over the instant case pursuant to the federal question raised in Plaintiffs' Complaint, 28 U.S.C. § 1331, and the Court's supplemental jurisdiction, 28 U.S.C. § 1367.

■ The Sixth Circuit in *Green* also gave credence to the arbitration agree-ment having recognized the district court's subject matter jurisdiction to enforce and hear challenges to the arbitration award. *See Green*, 200 F.3d at 973. Here, Defendant asserts that, "[t]he court retained jurisdiction solely 'for the sole purposes of compelling the arbitration process and facilitating discovery in preparation for, and production of witnesses and evidence during, the arbitration,'" quoting from Judge Newblatt's December 16, 1994 Order. (Def. Cross–Mot. at 3.) Defendant leaves out the sentence from that same Order that, "In addition, the Court has jurisdiction over enforcement of the terms of the arbitration agreement." Defendant also omits the language from the Agreement to Binding Arbitration, quoted above, where it agreed that the Court would retain jurisdiction for purpose of enforcing any award rendered by the Arbitrators. (*See* Agreement ¶ 11.) Thus, Defendant is well aware that it agreed to this Court retaining jurisdiction to enforce the Arbitration Award.

Furthermore, the Court still has jurisdiction because the FAA provides, in pertinent part, that:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding.

9 U.S.C. § 9. Here, as in *Green*, the parties in their Agreement have agreed that a judgment of the Court shall be entered upon the award made pursuant to the arbitration, and they specified the court. Furthermore, Plaintiffs applied to the Court for an order confirming that award within one year after the award was made. Therefore, this Court "*must grant such an order* unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9 (emphasis added).

Therefore, this Court has subject matter jurisdiction to entertain the questions presented.[5]

### 2. Whether the Court should vacate the Arbitration Award

According to the Sixth Circuit, "[c]ourts play only a limited role in reviewing arbitration decisions." *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328 (6th Cir.1998). "Once an arbitration is conducted under a valid arbitration contract, the FAA 'provides the exclusive remedy for challenging acts that taint an arbitration award.'" *Decker v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 205 F.3d 906, 909 (6th Cir.2000) (quoting *Corey v. New York Stock Exchange*, 691 F.2d 1205, 1211 (6th Cir.1982)). The FAA expresses Congress's "presumption that arbitration awards will be confirmed." *Andersons, Inc.*, 166 F.3d at 328. No party here is challenging the validity of the Agreement.

This Court may set aside an arbitration award under the FAA "only upon a finding that certain statutory or judicial grounds

are present." *Id.* (citing *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 135 (6th Cir.1996)); *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 420 (6th Cir.1995). In particular, an arbitration award "will be binding on the parties unless they challenge the validity of the underlying contract to arbitrate under [9 U.S.C.] § 2 of the FAA or seek to vacate, modify, or correct the award under [9 U.S.C.] §§ 10 or 11." *Decker*, 205 F.3d at 909 (citing *Corey*, 691 F.2d at 1212).[6]

Title 9, United States Code, Section 10 provides, in pertinent part, as follows:

In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) *Where the award was procured by* corruption, fraud, or *undue means.*

(2) *Where there was evident partiality or corruption in the arbitrators,* or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

---

5. This Court assumes that Defendant filed a separate civil action in state court raising the same issues that are before this Court because Defendant sincerely believed that this Court did not have subject matter jurisdiction over the instant case. Now that Defendant is reassured that this Court has jurisdiction over this matter, it does not need to maintain the civil action filed in state court.

6. Even if a party makes the necessary showing under Sections 10 or 11, the district court's power to vacate, modify, or correct an

arbitration award appears to be discretionary. Both Sections 10 and 11 state that "the United States court ... *may make an order*" vacating, modifying, or correcting an arbitration award "upon the application of any party to the arbitration." 9 U.S.C. §§ 10, 11. These statutes do not say *"shall"* or *"must"* make an order. Therefore, according to the plain language of the statute, a district court is not required to vacate an award even if a party satisfies the other conditions set out in these sections.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10(a) (emphasis added). Here, Defendant requests that the Court vacate the Arbitration Award because (1) Plaintiffs procured the award by undue means and (2) there was evident partiality in Arbitrator Shecter. (*See* Def.Br. in Opp. at 17.)

■ Defendant bears the burden of presenting "specific facts" to show that Plaintiffs procured the award by undue means and that there was evident partiality in an Arbitrator. *See Andersons, Inc.*, 166 F.3d at 329 (citing *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1359–61 (6th Cir. 1989)).

### a. "Undue means"

First, Defendant contends that the Arbitration Award was procured by undue means. "Courts have interpreted the 'undue means' language of the Act as requiring some type of bad faith behavior by the winning party." *Pontiac Trail Medical Clinic, P.C. v. PaineWebber, Inc.*, No. 92–1972, 1993 WL 288301, at *4 (6th Cir. July 29, 1993). The term "undue means" "clearly connotes behavior that is immoral if not illegal." *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir.1992). "[M]ere sloppy or overzealous lawyering" does not constitute "undue means." *Id.*

■ Pursuant to Section 10(a)(1), Defendant must show that "the undue means caused the award to be given." *A.G. Edwards*, 967 F.2d at 1403; *see Forsythe International, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (5th Cir.1990). In particular, according to the Sixth Circuit,

In reviewing claims under § 10(a)(1), courts have relied upon a three-part test to determine whether an arbitration award should be vacated: (1) the plaintiff must establish fraud by clear and convincing evidence; (2) the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration; and, (3) the petitioner must demonstrate that the fraud materially related to an issue in the arbitration.

*Pontiac Trail*, 1993 WL 288301, at *3. Courts apply this same test to cases raising claims of "undue means." *See A.G. Edwards*, 967 F.2d at 1404.

■ In the instant case, the Court finds that Defendant has not established undue means by clear and convincing evidence. While Plaintiffs' counsel behaved unprofessionally by engaging in *ex parte* communications with an Arbitrator, this Court cannot conclude that her behavior rose to the level of being illegal, immoral, or in bad faith. At its worst, her behavior was sloppy, overzealous lawyering. The Arbitrators themselves unanimously found Defendant's accusations of improper conduct that was less severe than undue means to be without merit, and Arbitrator Shecter dispelled any suggestion of influence on her deliberations. Therefore, the Court concludes that Defendant has not shown undue means that would justify vacating the Arbitration Award.

It is unclear to this Court whether the alleged undue means could have been discovered upon the exercise of due diligence prior to or during the arbitration, but the Court need not reach this question, having found that Defendant has not proved undue means. Similarly, this Court need not reach the question of whether Defendant has demonstrated that the undue means materially related to an issue in the arbitration, although Arbitrator Shecter has reassured the Court that any conversations with Plaintiffs' counsel were authorized by the other Arbitrators and that those conversations did not relate to the substance of the deliberations.

Therefore, this Court concludes that the Arbitration Award should not be vacated because of undue means.

### b. "Evident partiality"

■ Second, Defendant urges the Court to vacate the Arbitration Award because there was "evident partiality" in Arbitrator Shecter. The party seeking to set aside an arbitration award on grounds of evident partiality bears the burden of proving specific facts establishing a reasonable impression of partiality. *See Andersons, Inc.*, 166 F.3d at 329. According to the Sixth Circuit, "evident partiality will be found only 'where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.'" *Id.* at 328 (quoting *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir.1989)). "This standard requires a showing greater than an 'appearance of bias,' but less than 'actual bias.'" *Id.* at 329 (quoting *Apperson*, 879 F.2d at 1358). "The alleged partiality must be direct, definite, and capable of demonstration, and 'the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator.'" *Id.* (quoting *Consolidation Coal Co. v. Local 1643, United Mine Workers of America*, 48 F.3d 125, 129 (4th Cir.1995)).

■ Here, the specific facts adduced by Defendant are the series of *ex parte* communications between Plaintiffs' counsel and Arbitrator Shecter and Plaintiffs' debt to Arbitrator Shecter. Defendant argues, in effect, that *ex parte* communications are *per se* evident partiality. Defendant also argues that because Plaintiffs owed Arbitrator Shecter her fees for some time, that unduly influenced her to render a decision in their favor. These are not enough for a reasonable person to conclude that an Arbitrator was partial to one party to the arbitration. Defendant has not shown specific facts that indicate improper motives on the part of Arbitrator Shecter. Therefore, this Court concludes that there was no "evident partiality" in Arbitrator Shecter.

Defendant urges this Court to follow the district court in *Valrose Maui, Inc. v. Maclyn Morris, Inc.*, 105 F.Supp.2d 1118 (D.Haw.2000). In *Valrose Maui*, the district court decided the case under Hawaiian law, although the court said that its analysis would not be different if it had applied federal law. *See id.* at 1122 n. 7. "Hawaii courts have explained that evident partiality not only exists when there is actual bias on the part of the arbitrator, but also when undisclosed facts demonstrate a 'reasonable impression of partiality'" and, according to the court in *Valrose Maui*, "Hawaii relies on federal case law in determining what constitutes evidence partiality." 105 F.Supp.2d at 1124 (quoting *Sousaris v. Miller*, 92 Hawai'i 534, 993 P.2d 568, 576 (1998) and *Schmitz v. Zilveti*, 20 F.3d 1043, 1046 (9th Cir.1994)).

It appears that the district court in *Valrose Maui* concluded that the mere appearance of bias created by even good faith *ex parte* communications was sufficient to show "evident partiality." According to the Sixth Circuit, however, merely showing the "appearance of bias," is not sufficient to show "evident partiality," although a party need not show "actual bias." *Andersons, Inc.*, 166 F.3d at 329. Therefore, this Court questions whether the decision in *Valrose Maui* is consistent with the standard articulated by the Sixth Circuit.

This Court concludes that, under standards set forth by the Sixth Circuit, Defendant has not shown clear and convincing evidence of specific facts that rise to the level of either "undue means" or "evident partiality." Therefore, this Court will deny Defendant's Cross–Motion to Vacate and will grant Plaintiffs' Application.

This Court will uphold the Arbitration Award for another equally important reason. Ever since King John of England submitted to the rule of law articulated in the Magna Carta in 1215, the general principle that "justice delayed is justice denied" has been fundamental to our legal system and the legal systems from which ours descended. The instant case is an unfortunate example of how profound de-

lay imperils justice. The Arbitration Award appears to be fair, especially given the number of Plaintiffs who will be compensated, but the amount of time it has taken to arrive at that award is unfair. The parties have endured almost seventeen years of litigation and arbitration. Any further delay in confirming the award would be unjust.

### 3. Counsels, behavior

Because the Court must be deferential to the arbitration process and because Defendant has not met its burden of proof, this Court will not vacate the Arbitration Award. Nevertheless, the attorneys in this civil action deserve to be admonished for years of unprofessional behavior.

Plaintiffs' counsel does not understand the propriety of avoiding *ex parte* communications, no matter how well-intentioned, nor the significance of threatening Arbitrators with litigation. According to Plaintiffs' counsel herself, she discussed the slow pace of the arbitration proceedings with "a federal court judge [other than this Court], a state court judge, a plaintiffs' employment attorney, two defense employment attorneys and a litigation/procedural expert attorney of pre-eminent stature in the community," (Def.Ex.D.), and enlisted the help of other attorneys to prepare for litigation against the Arbitrators. Plaintiffs' counsel apparently operated under the mistaken impression that she could communicate freely with Arbitrator Shecter *ex parte* about the pace of the arbitration and the potential litigation because her clients selected Arbitrator Shecter.

Defendant's counsel's behavior, on the other hand, smacks of bad faith. Defendant's counsel selected an Arbitrator who had been one of the attorneys representing Defendant. Indeed, according to Defendant's counsel, Arbitrator Williams was City Attorney for one year during the pendency of this civil action. (*See* Hr'g Tr. at 54–55.) As City Attorney he could be considered to have been part of Defendant. Then, after that Arbitrator agreed that

Defendant is liable, Defendant's counsel argued that the Arbitrator selected by Plaintiffs is biased. Defendant's counsel signed an agreement that the district court would retain jurisdiction and then, after receiving an unfavorable award, argued that the district court lacks jurisdiction to enter a judgment giving effect to that award. Defendant paid 100% of some invoices from Arbitrator Williams who kept the money until Plaintiffs paid their half, and then Defendant argued that Arbitrator Shecter was influenced because Plaintiffs were dilatory in paying invoices sent to them. Finally, after having agreed not to appeal the results of arbitration and after Defendant admitted separately that there is no budget to pay the Arbitration Award, Defendant's counsel filed a Motion for a New Trial with the arbitration panel, a Cross–Motion to Vacate with this Court, and a new lawsuit in the Circuit Court for the County of Genesee.

In short, the accusations of unprofessional behavior traded by counsel for both parties are the proverbial pot calling the kettle black. As to their selection of Arbitrators, because counsel for both parties purposefully chose Arbitrators who were not exactly neutral, the effect of the party-selected Arbitrators delayed the proceedings and, ultimately, canceled out any alleged partiality. As to their behavior throughout the sixteen-plus years this case has been pending, counsel for both parties should re-familiarize themselves with the Civility Principles of this judicial district and avail themselves of continuing legal education on arbitration and legal ethics.

Plaintiffs' counsel has requested that this Court impose sanctions against Defendant's counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure. This Court will continue to take that request under advisement and will refrain from weighing the need for sanctions against any of the parties and any of their attorneys until the parties have complied with this Memorandum Opinion and Order and this Court's Judgment.

## Conclusion

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Defendant's Cross–Motion to Vacate Arbitration Award [Docket Entry 480] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Application for Entry of Judgment [Docket Entry 479] is **GRANTED.**

**SO ORDERED.**

### *JUDGMENT*

This action having been submitted to final and binding arbitration pursuant to a stipulation of the parties; the parties also having stipulated to the Court retaining jurisdiction for the enforcement of any award rendered by the Arbitrators; the arbitration proceedings having resulted in an award in favor of Plaintiffs Maradean Barcume, Ann Drennan, Lee Ann Gasper, Michelle Marshke, Connie Martin, Maureen McIntyre, Dawn Skidmore, Kristine Surdu, and Ann Talt–Harris; and this Court being fully advised in the premises,

**IT IS HEREBY ORDERED AND ADJUDGED** that Plaintiffs Maradean Barcume, Ann Drennan, Lee Ann Gasper, Michelle Marshke, Connie Martin, Maureen McIntyre, Dawn Skidmore, Kristine Surdu, and Ann Talt–Harris recover from Defendant City of Flint the combined sum of $2,253,270.00 in accordance with the Arbitration Award of August 31, 2000.

**IT IS FURTHER ORDERED** that pursuant to the Agreement to Binding Arbitration, fifty percent (50%) of the sum of $2,253,270.00 is due within thirty (30) days of entry of this Judgment, plus interest from September 30, 2000 at the prevailing rate provided by law, and the remaining fifty percent (50%) shall be paid within thirty (30) days of the beginning of the subsequent fiscal year.

**IT IS FURTHER ORDERED** that the Clerk serve a copy of this Judgment by United States mail on counsel for Plaintiffs and Defendant.