NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0058n.06
Filed: January 24, 2007

No. 05-1497

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


JAMES D. MITCHELL;                              )
JOHN W. MITCHELL,                               )
                                                )
    Petitioners-Appellants,                      )
                                                )    ON APPEAL FROM THE UNITED
v.                                              )    STATES DISTRICT COURT FOR THE
                                                )    EASTERN DISTRICT OF MICHIGAN
ROBERT EDWARD AINBINDER, JR.;                   )
CANTONE RESEARCH INC.,                          )
                                                )
    Respondents-Appellees.                       )


Before: CLAY and SUTTON, Circuit Judges; SHARP, District Judge.[*]

SHARP, District Judge. James D. Mitchell and John W. Mitchell (collectively, "Mitchell")

appeal from a district court decision upholding an arbitration award in favor of Robert Edward

Ainbinder and Cantone Research, Inc. For the reasons set forth below, we affirm the judgment of

the district court.


I.


James Mitchell and his father, John Mitchell, opened three accounts with Cantone

---

[*]The Honorable Allen Sharp, United States District Judge for the Northern District of
Indiana, sitting by designation.

No. 05-1497
*Mitchell v. Ainbinder.*

Research, Inc., a brokerage firm in New Jersey. One account was held by James Mitchell, another was held jointly by James and his father, and another was held by the Special Needs Trust for John W. Mitchell, Jr. Robert Ainbinder, one of Cantone Research's brokers, was listed as the account executive on all three accounts from January through July of 1998.

In July 1998, Ainbinder left Cantone Research to join Sharpe Capital. Mitchell transferred his individual account to Sharpe Capital at that time, but kept the joint and trust accounts at Cantone Research. Mitchell incurred losses on all three accounts.

On January 2, 2001, Mitchell filed a Claim for Arbitration with NASD Dispute Resolution, Inc. against Ainbinder and Cantone Research. The statement of claim alleged that Ainbinder and Cantone Research violated federal and state securities laws with respect to Mitchell's investments at Cantone Research and Sharpe Capital. The statement of claim also brought common law claims of unsuitability, churning, unauthorized trading, fraud, and breach of fiduciary duty. The three-member panel of arbitrators, approved by the parties, conducted nine days of hearings between June 10, 2003, and April 7, 2004. On May 3, 2004, the arbitrators denied Mitchell's claims.

On July 2, 2004, Mitchell filed a petition in the district court to vacate the arbitration award. On March 10, 2005, the district court denied the petition to vacate and entered judgment on the arbitration award. This appeal followed.

II.

As a threshold matter, we briefly address Cantone Research's contention that we lack jurisdiction to hear this case because the amount in controversy requirement has not been satisfied. Diversity jurisdiction exists only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332; *see Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006). This Court has stated that district courts "should consider the amount alleged in a complaint and should not dismiss a complaint for lack of subject matter jurisdiction unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Massachusetts Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996). Where, as here, the petitioner seeks to reopen the arbitration, the amount in controversy "includes the matter at stake in the arbitration." *See Sirotzky v. New York Stock Exchange*, 347 F.3d 985, 989 (7th Cir. 2003) (citations omitted); *see also Ford v. Hamilton Investments, Inc.*, 29 F.3d 255, 260 (6th Cir. 1994). Even a cursory review of the statement of claim reveals that well over $75,000 was at stake in the arbitration. Mitchell's total claim, which included punitive damages, totaled more than $770,000, exclusive of costs and attorney fees. S*ee Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir. 1990) (request for punitive damages may satisfy the amount-in-controversy requirement). There being nothing to suggest that that claim was made in bad faith, we reach the merits of this case.

Our role in reviewing arbitration decisions is limited, and we apply "one of the narrowest standards of judicial review in all of American jurisprudence." *Tenn. Valley Auth. v. Tenn.*

*Valley Trades & Labor Council*, 184 F.3d 510, 515 (6th Cir. 1999) (internal quotation marks omitted). So long as "an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (internal quotation marks omitted). A court may vacate an arbitration award: (1) where the award was procured by fraud; (2) where the arbitrators were evidently partial or corrupt; (3) where misconduct of the arbitrators prejudiced the rights of the parties; or (4) where the arbitrators exceeded their powers. 9 U.S.C. § 10(a). A reviewing court may also vacate an award where the arbitrators have manifestly disregarded the law. *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) (citing *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 135 (6th Cir. 1996)). When reviewing a district court's denial of a motion to vacate an arbitration decision, we consider questions of law *de novo*, and we accept the court's findings of fact, unless clearly erroneous. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir. 2002).

Mitchell argues that the arbitration panel manifestly disregarded the law in its decision. Specifically, Mitchell argues that the panel acted with manifest disregard for the law in denying their suitability, churning, and breach of fiduciary duty claims. We disagree.

"An arbitration panel acts with manifest disregard if '(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle.'" *Dawahare*, 210 F.3d at 669 (quoting *Merrill Lynch, Pierce, Fenner & Smith,*

*Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)).  Proof that the panel "disregarded" the law or

"refused to heed" the law implicitly requires proof that the arbitrators "have consciously chosen

not to apply" the relevant law.  *See Dawahare*, 210 F.3d at 669 (citing *M & C Corp. v. Erwin

Behr GmbH & Co.*, 87 F.3d 844, 851 n.3 (6th Cir. 1996)).  To make things even more difficult

for petitioners, arbitrators are not required to explain their decisions.  When they choose not to do

so, as they have done here, "it is all but impossible to determine whether they acted with manifest

disregard for the law." *Dawahare*, 210 F.3d at 669 (citing *Jaros*, 70 F.3d at 421)).  "If the court

can find any line of argument that is legally plausible and supports the award then it must be

confirmed.  Only where no judge or group of judges could conceivably come to the same

determination as the arbitrators must the award be set aside." *Jaros*, 70 F.3d at 421

We agree with the district court's conclusion that Ainbinder and Cantone Research

presented plausible arguments for the denial of Mitchell's suitability claim.  Contrary to

Mitchell's assertions on appeal, the arbitration panel was presented with evidence suggesting that

Mitchell was an aggressive trader who preferred high risk investments.

We also agree with the district court's conclusion that Ainbinder and Cantone Research

presented plausible arguments for the denial of Mitchell's churning claims.  To bring a successful

churning claim, a petitioner must establish three elements: "(1) the trading must be excessive in

light of the customer's objectives; (2) the broker must exercise control over the account; [and]

(3) the broker must act with intent to defraud or with willful and reckless disregard of the

customer's interest." *M & B Contracting Corp. v. Dale*, 795 F.2d 531, 533 (6th Cir. 1986)

(citations omitted). Mitchell relies solely on the high rate of turnover to support his churning claim. While that may be enough to support a churning claim before an arbitration panel, it does not require a finding of excessive trading in every instance. NASD Conduct Rule IM-2310(b)(2) states that "[t]here are no specific standards to measure excessiveness of activity in customer accounts because this must be related to the objectives and financial situation of the customer involved." (internal quotations omitted).

Mitchell also argues that Christine Cantone, vice president of Cantone Research, perjured herself during the arbitration proceedings and that this perjury amounts to "fraud" and "undue means" under 9 U.S.C. § 10(a)(1). Specifically, Mitchell argues that Ms. Cantone testified falsely that: (1) the records requests of Cantone Research related solely to Ainbinder, when in fact the requests called for the records of "any other broker" assigned to or associated with the Mitchell accounts; and (2) that no broker at Cantone Research required special supervision, when in fact Ainbinder was to be under strict supervision.

Generally, when a plaintiff is seeking vacatur of an arbitration award under 9 U.S.C. § 10(a)(1), fraud must be established by clear and convincing evidence. *See Bonar v. Dean Witter Reynolds, Inc.*, 836 F.2d 1378, 1383 (11th Cir. 1988). Both perjury and fraud require proof of some sort of willful intent to give false testimony. Therefore, Mitchell would be required to prove, by clear and convincing evidence, that Ms. Cantone intended to provide false testimony. They have failed to do so. Therefore, vacatur on this basis would be improper.

III.

For these reasons, the judgment of the district court is AFFIRMED.