NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0649n.06
Filed: September 4, 2007

No. 06-5390

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TY KEVIN BAUER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF TENNESSEE |
| CARTY & COMPANY, INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: BOGGS, Chief Circuit Judge; and DAUGHTREY and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant Ty Kevin Bauer appeals the district court's denial of his motion to vacate the arbitration award granted to defendant-appellee Carty & Company, Inc. ("Carty"). Because Bauer failed to demonstrate by clear and convincing evidence that the award was procured by fraud or undue means, we affirm the decision of the district court.

I.

Bauer is a former employee of Carty, a registered securities broker. Carty filed a Statement of Claim with the National Association of Securities Dealers, Inc. ("NASD") alleging that, pursuant to two contracts, Bauer was indebted to Carty for $589,794 in losses caused by his trading activities. The first contract, the Trading Agreement, required Bauer to pay Carty his share of the losses in his

trading accounts if he left his employment with Carty. The second contract, the ICG Agreement, required Bauer to pay Carty $371,337.50 for losses incurred by virtue of Bauer's purchase, retention, and pricing of certain Internet Capital Group ("ICG") bonds. During the arbitration of that claim, both parties had the opportunity to conduct discovery pursuant to the NASD Arbitration Rules. Specifically, a party could request documents from the other party, object to a document request, contest an objection to a document request, and subpoena documents from a nonparty. Prior to responding to Bauer's document requests, Carty requested and Bauer consented to entry of a Consent Protective Order, which protected propriety and confidential documents produced in discovery. Bauer's two document requests relevant to this appeal and Carty's responses were as follows:

**REQUEST NO. 24:** Please produce all documents sent to the NASD with respect to the ICG bonds concerning Bauer and the form 3070 disclosure referenced in footnote 1 in the Claimant's Statement of Claim.

**RESPONSE TO REQUEST NO. 24:** Responsive documents will be produced.

**REQUEST NO. 35:** Please produce all correspondence sent to the NASD or received from the NASD regarding ICGE bonds from October 1, 2000 through the date of response.

**RESPONSE TO REQUEST NO. 35:** Carty objects to this request to the extent it seeks information relating to bonds not the subject of this claim as seeking proprietary and confidential information which is neither relevant nor reasonably calculated to lead to the discovery of relevant evidence. All responsive documents relating to the claim at issue are being produced in response to Request no. 24.

Bauer did not challenge any of Carty's objections or serve subpoenas on the Securities and Exchange Commission ("SEC") or NASD. After a hearing, the arbitration panel ruled that Bauer was liable to Carty for $528,476 in compensatory damages for breach of contract.

Following the issuance of the arbitration award, Bauer filed a voluntary petition for

bankruptcy, which Carty challenged in an adversary proceeding. In response to document requests in that proceeding, Carty produced two letters between Carty and the SEC relating to an SEC examination of Carty's office in late 1999 and early 2000 (the "SEC Letters"), copies of which had been provided to the NASD. The SEC Letters identified improper pricing by Carty of certain bonds not attributable to Bauer and deficiencies in Carty's supervisory and reporting structure.

Bauer brought this action before the district court to vacate the arbitration award on the grounds that he would have prevailed in the arbitration had Carty not fraudulently withheld the SEC Letters. The district court denied Bauer's motion to vacate because it concluded that Bauer had failed to demonstrate: (1) the existence of the fraud by clear and convincing evidence and (2) that the fraud was not discoverable upon the exercise of due diligence prior to or during the arbitration.

## II.

"Courts play only a limited role in reviewing an arbitration decision." *Bd. of County Comm'rs of Lawrence County, Ohio v. L. Robert Kimball & Assocs.*, 860 F.2d 683, 685 (6th Cir. 1988). "The standard of review in arbitration cases is very narrow." *Anaconda Co. v. Dist. Lodge No. 27 of the Int'l Ass'n of Machinists & Aerospace Workers*, 693 F.2d 35, 36 (6th Cir. 1982). "[C]ourts ultimately cannot weigh the merits of the grievance or reverse simply because they disagree with the result . . . ." *Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local 24*, 357 F.3d 546, 557 (6th Cir. 2004). "[T]he [F]ederal Arbitration Act [("FAA")] provides the exclusive remedy for challenging acts that taint an arbitration award . . . ." *Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1211 (6th Cir. 1982). In relevant part, the FAA provides that a court may vacate an arbitration award "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a). To merit the vacation of the arbitration award under § 10(a)(1) for either

fraud or undue means, the movant must demonstrate: "(1) clear and convincing evidence of fraud, (2) that the fraud materially relates to an issue involved in the arbitration, and (3) that due diligence would not have prompted the discovery of the fraud during or prior to the arbitration." *Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503 (6th Cir. 2003) (citing *Pontiac Trail Med. Clinic, P.C. v. PaineWebber, Inc.*, No. 92-1972, 1993 WL 288301, at *3 (6th Cir. July 29, 1993)); *Barcume v. City of Flint*, 132 F. Supp. 2d 549, 556 (E.D. Mich. 2001) (citing *Pontiac Trail* and *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992)). Both fraud and undue means require proof of intentional misconduct or bad faith. *See Mitchell v. Ainbinder*, 214 F. App'x 565, 568 (6th Cir. 2007); *Pontiac Trail*, 1993 WL 288301, at *4; *see also PaineWebber Group, Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 991 (8th Cir. 1999). "[U]ndue means clearly connotes behavior that is immoral if not illegal" and does not include "sloppy or overzealous lawyering." *Pontiac Trail*, 1993 WL 288301, at *4; *see also PaineWebber*, 187 F.3d at 991; *A.G. Edwards*, 967 F.2d at 1404.

When reviewing a district court's decision to vacate or confirm an arbitration award, this court reviews findings of fact for clear error and questions of law *de novo*. *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 135 (6th Cir. 1996); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947-49 (1995). Whether there is clear and convincing evidence of fraud is a question of fact, which we review for clear error. *See Int'l Bhd. of Teamsters, Local 519*, 335 F.3d at 504 (remanding to the district court for a factual determination as to whether there was clear and convincing evidence of fraud); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988) (reviewing district court's refusal to vacate award under abuse of discretion standard); *Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986) (remanding because district court failed to make a finding

on whether fraud was proven); *see also Trice v. Commercial Union Assurance Co.*, 334 F.2d 673, 677 (6th Cir. 1964); 37 Am. Jur. 2d *Fraud and Deceit* § 28.

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985).

The district court found that Bauer had not demonstrated clear and convincing evidence of fraud. Specifically, the district court stated:

> It appears to the Court that Carty produced documents (or did not) based on a narrow interpretation of Bauer's discovery request as to relevancy, where [Bauer] no doubt intended (and hoped for) a broader one. Disputes over such differences in interpretation are hardly unknown in discovery practice and are in fact the stuff of a majority of the motions to compel that find their way to the Court. While regretful, such activity could hardly be said to be "immoral if not illegal."

After reviewing the record on appeal, the court can find no basis for concluding that the district court was clearly erroneous in its factual finding that Carty's actions were based on "differences in interpretation," not the intentional misrepresentation or bad faith required for fraud or undue means.

The only basis Bauer offers for the proposition that Carty's failure to produce the SEC letters was an intentional misrepresentation or was done in bad faith is an inference from Carty's responses to Bauer's document requests. In short, Bauer argues that Carty must have acted in bad faith because the SEC letters were responsive to the valid document requests but were not produced. While this behavior could certainly be consistent with bad faith, this inference alone is not clear and convincing evidence of bad faith.[1] There is no evidence in the record to suggest whether Carty's response was

---

[1] The record suggests that the testimony of two Carty employees during the arbitration was inconsistent with the information in the SEC Letters, however, Bauer does not argue that this

made in bad faith or was merely due to oversight or forgetfulness.  As the burden of establishing fraud or undue means by clear and convincing evidence is borne by Bauer, this absence of evidence is fatal to his claim.  *See Int'l Bhd. of Teamsters, Local 519*, 335 F.3d at 503.

Furthermore, Bauer has not established by clear and convincing evidence the predicate on which his desired inference relies: that the SEC letters were responsive to valid document requests. Carty argues that because Request No. 24 sought documents with respect to the ICG bonds concerning Bauer *and* the form 3070 disclosure, the SEC Letters were not responsive.  The SEC Letters address the ICG bonds and Bauer but do not mention the form 3070 disclosure.  Bauer asserts that Carty understood the request to include the SEC Letters but provides no evidence to support this assertion.[2]  While Carty interpreted the request narrowly, its response was not, in itself, a misrepresentation. Although the SEC Letters were responsive to Request No. 35, Carty argues that it validly objected to the request on the basis of relevance.  In response to Request No. 35, Carty objected because it sought "proprietary and confidential information which [was] neither relevant nor reasonably calculated to lead to the discovery of relevant evidence."[3]  Although Bauer has argued

---

provides evidence of bad faith.  Rather, Bauer wisely concedes that one witnesses may have been "completely out of the loop" and the other "may have believed that he was testifying truthfully." Both perjury and fraud require proof of some sort of willful intent to give false testimony, and the mere fact that some testimony may have been false or mistaken cannot satisfy Bauer's burden of proving this intent by clear and convincing evidence.  *See Mitchell*, 214 F. App'x at 568.

[2]Bauer argues that Carty should have objected to the request as ambiguous if its meaning was unclear.  However, Carty has never argued that the request was ambiguous.  In order for the request to have the meaning that Bauer desires, it would request documents "with respect to the ICG bonds concerning Bauer *or* the form 3070 disclosure."  Carty interpreted the request in the only way that gives meaning to the choice of the conjunctive rather than the disjunctive.

[3]Carty does not attempt to defend its objection on the basis of confidentiality, which was likely without merit in light of the Consent Protective Order.  The offering of a meritless defense, however, is insufficient to establish fraud or undue means. *See Pontiac Trail*, 1993 WL 288301, at

-6-

that the SEC Letters were relevant for showing that "he priced bonds in accordance with Carty's policies and procedures" and "was not the only Carty employee to price bonds off-market," Bauer has never explained why these facts are relevant to the claim subject to arbitration. The claim subject to arbitration was for breach of two contracts requiring him to reimburse Carty for trading losses. There is no evidence in the record to suggest that Bauer's pricing of bonds had any effect on whether he had breached the contracts by failing to reimburse Carty.[4] Therefore, Carty's relevance objection may have had merit. The narrow interpretation of a document request and withholding of a document based upon a potentially meritorious objection do not constitute clear and convincing evidence of bad faith or immoral conduct required for fraud or undue means. Even if this evidence could be construed that way, the district court's factual finding that Carty's actions were based on "differences in interpretation," is certainly plausible and, therefore, not clearly erroneous. *See Anderson*, 470 U.S. at 573-74.

III.

For the foregoing reasons, we affirm the decision of the district court.

---

*5; *see also A.G. Edwards*, 967 F.3d at 1404.

[4]This obviously casts serious doubt on Bauer's ability to show that the fraud materially relates to an issue involved in the arbitration. *See Int'l Bhd. of Teamsters, Local 519*, 335 F.3d at 503. However, the district court did not address this issue, and this court need not reach it.