# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 12, 2025

Lyle W. Cayce
Clerk

No. 24-20051

Guardian Flight, L.L.C.,

*Plaintiff—Appellee*,

*versus*

Medical Evaluators of Texas ASO, L.L.C.,

*Defendant—Appellant*,

CONSOLIDATED WITH

No. 24-20204

Guardian Flight, L.L.C.; Reach Air Medical Services, L.L.C.; Calstar Air Medical Services, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Aetna Health, Incorporated; Kaiser Foundation Health Plan, Incorporated,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 4:22-CV-3805, 4:22-CV-3805,
4:22-CV-3979

---

Before SMITH, CLEMENT, and DUNCAN, *Circuit Judges*.

STUART KYLE DUNCAN, *Circuit Judge*:

We address challenges by emergency air medical providers to award determinations made under the No Surprises Act ("NSA" or "Act"). *See* 42 U.S.C. §§ 300gg-111, 300gg-112. We are guided by a related decision, issued simultaneously with this one, which addresses some of the same issues. *See Guardian Flight, L.L.C v. Health Care Serv. Corp.*, No. 24-10561, --- F.4th --- (5th Cir. _____, 2025) [*Guardian Flight I*].

Enacted in 2022, the NSA protects patients from surprise bills incurred when they receive emergency services from out-of-network providers. The NSA does so by, *inter alia*, relieving patients from liability and creating an Independent Dispute Resolution ("IDR") process for resolving billing disputes between providers and insurers. *Id.* § 300gg-111(c)(1)–(5); *see generally Tex. Med. Ass'n v. United States Dep't of Health & Human Servs.*, 110 F.4th 762, 767–78 (5th Cir. 2024) (discussing the NSA).

In *Guardian Flight I*, we decide that the NSA does not provide a general private right of action to challenge award determinations. Instead, the NSA incorporates Federal Arbitration Act ("FAA") provisions that allow courts to vacate awards only for specific reasons. *See Guardian Flight I*, at 7. Applying that decision here, we AFFIRM the district court's dismissal of the providers' claims against Aetna Health, Inc. ("Aetna") and Kaiser Foundational Health Plan, Inc. ("Kaiser").

No. 24-20051
c/w No. 24-20204

Finally, we address an additional issue not presented in *Guardian Flight I*. Here, the providers sued not only the insurers but also Medical Evaluators of Texas ("MET"), the neutral third party who made the award determinations. The district court denied MET's invocation of arbitral immunity and MET cross-appealed. We agree with MET that it enjoys the immunity from suit typically enjoyed by arbitrators. Accordingly, we REVERSE the district court's judgment on that point and REMAND with instructions to dismiss the providers' claims against MET.

I

This appeal involves two consolidated cases. We briefly sketch their background and procedural history.

A

In February 2022, Guardian Flight transported a patient in Nebraska to a hospital 225 miles away. The patient's insurer was Aetna, but Guardian Flight is out of Aetna's network. A dispute arose over the value of the services: Guardian Flight submitted a claim to Aetna for $56,742.20, but Aetna countered that the services were worth only $31,965.53.

The dispute involves what the NSA calls the "qualifying payment amount" or "QPA." This refers to the "median of the contracted rates recognized by the plan or issuer" for the relevant service in the same insurance market and geographic area. *Id.* § 300gg-111(a)(3)(E)(i). Under the NSA and its regulations, the insurer must tell a provider its QPA for the service and explain how it was calculated. *See generally* 45 C.F.R. §§ 149.140, 149.510.

Guardian Flight asked Aetna how it calculated its QPA for the services in question but alleges Aetna offered no explanation. After negotiations over the amount failed, the parties entered the IDR process.

3

They selected MET as their "certified independent dispute resolution entity" or "CIDRE." *See* 42 U.S.C. § 300gg-112(b)(2)(A). After each submitted a number for payment, MET selected Aetna's number.

Guardian Flight then sued Aetna and MET, seeking to vacate the award and to get a new CIDRE. Guardian Flight alleged Aetna misrepresented its QPA and failed to make required disclosures about how the QPA was calculated.

B

In January and February 2022, Guardian Flight and two of its affiliates, Reach Air Medical Services, L.L.C. ("REACH") and Calstar Air Medical Services, L.L.C. ("CALSTAR") (together, with Guardian Flight, "Providers"), provided emergency air-ambulance services to six patients insured by Kaiser. Providers are all out of Kaiser's network. For all six claims, Kaiser sent Providers an explanation of benefit ("EOB") that included a payment offer. For three of the claims, the EOB stated the offer reflected the QPA; for the other three, the EOB did not. Unable to agree on any claim, the Providers and Kaiser entered IDR. MET, as the CIDRE, chose Kaiser's number for all six claims.

The Providers sued Kaiser and MET, seeking vacatur of the awards. In essence, the Providers claimed Kaiser cheated the IDR process by initially offering the Providers one payment amount and then submitting to MET a lower number purporting to be its QPA.

C

The district court consolidated Guardian Flight's suit against Aetna and MET with the Providers' suit against Kaiser and MET. Aetna and MET moved to dismiss on the grounds that Guardian Flight failed to plead

4

No. 24-20051
c/w No. 24-20204

facts sufficient to trigger vacatur and that MET was entitled to arbitral immunity. Kaiser and MET moved to dismiss on the same grounds.[1]

The district court granted Aetna's motion to dismiss Guardian Flight's claims and Kaiser's motions to dismiss Guardian Flight and CALSTAR's claims. But the court denied MET's motion to dismiss based on arbitral immunity.

The Providers now appeal the dismissals, while MET cross-appeals the denial of arbitral immunity.[2]

II

We review *de novo* the dismissal of a complaint for failure to state a claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

---

[1] The district court was then notified of a similar case in the Middle District of Florida in which REACH (and other emergency providers) had sued Kaiser and others. After REACH's claims were dismissed, *Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1087 (M.D. Fla. 2023), *appeal dismissed*, No. 24-10134, 2024 WL 3402119 (11th Cir. May 30, 2024), the court ruled REACH was collaterally estopped from suing Kaiser and MET. Guardian Flight and CALSTAR, however, were not similarly estopped from suing Kaiser and MET. The Providers, Kaiser, and Aetna do not appeal these collateral estoppel rulings. REACH appealed the dismissal of its claims in *Med-Trans* to the Eleventh Circuit. Here, Providers argue that if the Eleventh Circuit reverses, then the *Med-Trans* decision will lack preclusive effect. *See* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4433 (3d ed. 2025). We need not decide that question, however, because we affirm the dismissal of REACH's claims against Kaiser for the same reasons we affirm the dismissal of Guardian Flight and CALSTAR's claims against Kaiser. *See infra* III(A)–(B).

[2] MET also appeals the district court's denial of collateral estoppel as to Guardian Flight and CALSTAR's claims against it. Because we hold MET enjoys arbitral immunity, we do not reach this issue. *See infra* IV.

*v. Twombly*, 550 U.S. 544, 570 (2007)). We accept factual allegations as true, construing them in the light most favorable to the plaintiffs. *Causey*, 394 F.3d at 288.

When asserting a claim based on fraud, "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To do so, plaintiffs must "specify the statement contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002) (quoting *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 412 (5th Cir. 2001)).

### III

Providers seek to vacate the awards, alleging that during the IDR process Aetna and Kaiser misrepresented their QPAs and failed to disclose required information about how they were calculated.

### A

Providers first argue that the NSA gives them a private right to seek vacatur by providing that IDR determinations "shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I).

We have already decided, however, that this provision creates no private right of action to challenge IDR awards. In *Guardian Flight I*, we explained that the NSA explicitly *bars* judicial review of those awards, except with respect to four scenarios incorporated from the FAA. *Guardian Flight I*, at 4; *see also id.* § 300gg-111(c)(5)(E)(i)(II) (providing IDR determinations "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9"). Instead of providing a

general private right of action to challenge awards, the NSA employs an administrative remedy. *See Guardian Flight I*, at 8.

Providers argue they are not seeking "review" of an IDR award but rather "vacatur" of one. But we rejected a similar argument in *Guardian Flight I*. There, we saw no distinction between judicial "review" and judicial "enforcement." *Guardian Flight I*, at 6. For similar reasons, we see no distinction between "review" and "vacatur." A court's exercise of "review" includes the power "to remand, modify, *or vacate*" orders by a subordinate body. *Review*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added); *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) ("The Federal Arbitration Act . . . provides for expedited judicial review to confirm, vacate, or modify arbitration awards.").

B

Accordingly, if Providers wish to seek vacatur of the awards, they must do so through the FAA paragraphs explicitly incorporated for that purpose. *See id.* § 300gg-111(c)(5)(E)(i)(II) (incorporating "paragraphs (1) through (4) of section 10(a) of title 9").

Relevant here is paragraph one, providing an arbitral award may be vacated "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). Pursuant to this provision, Providers argue Aetna and Kaiser procured their awards by misrepresenting their QPAs and refusing to explain how they were calculated. They argue the district court erred by ruling they had not alleged facts sufficient to trigger § 10(a)(1). We disagree.

Because the NSA explicitly incorporates the FAA provisions, we interpret "fraud or undue means" to have the same meaning in the NSA as

in the FAA.[3] Under the FAA, "[f]raud requires a showing of bad faith during the arbitration proceedings, such as bribery, undisclosed bias of an arbitrator, or willfully destroying or withholding evidence." *Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, 304 (S.D. Tex. 1997), *aff'd and adopted by* 161 F.3d 314 (5th Cir. 1998). "Undue means" "connotes behavior that is immoral if not illegal." *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992) (per curiam).[4]

Providers first claim Aetna and Kaiser acted in bad faith by failing to explain how they calculated the QPA, as required by 45 C.F.R. § 149.140(d)(2). But that alleged failure, standing alone, does not establish "bad faith" because it does not approach "bribery, undisclosed bias of an arbitrator, or willfully destroying or withholding evidence." *Trans Chem. Ltd.,* 978 F. Supp. at 304; *cf. France v. Bernstein*, 43 F.4th 367, 378 (3d Cir. 2022) (explaining that "knowingly concealing evidence" constitutes arbitration fraud (quoting *Biotronik Mess-Und Therapiegeraete GmbH & Co. v. Medford Med. Instrument Co.*, 415 F. Supp. 133, 138 (D.N.J. 1976))).

---

[3] Accordingly, we reject Providers' argument that "fraud" and "undue means" should be given their "ordinary" meaning, as opposed to their meaning under the FAA. *See Standard Oil Co. v. United States*, 221 U.S. 1, 59 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary."); *see also Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) ("[When] . . . judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.").

[4] Moreover, judicial review of an arbitration award under the FAA is "extraordinarily narrow." *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990). And "review under § 10 focuses on misconduct rather than mistake." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350–51 (2011).

No. 24-20051
c/w No. 24-20204

Next, Providers argue Aetna and Kaiser fraudulently misrepresented their QPAs for Providers' services. We again disagree that the allegations satisfy the FAA's bad faith standard.

Start with Aetna's representation to Guardian Flight. Guardian Flight only speculates that Aetna's reported QPA was inaccurate, but let's assume *arguendo* that it was. Guardian Flight alleged no facts supporting an inference that the misstatement was intentional. *See AT&T Mobility LLC*, 563 U.S. at 350–51 ("[R]eview under § 10 focuses on misconduct rather than mistake."). Accordingly, Guardian Flight's allegations fall short of fraud. *Nat'l Cas. Co. v. First State Ins. Grp.*, 430 F.3d 492, 499 (1st Cir. 2005) (explaining vacatur under the FAA requires "intentional malfeasance"); *see also Mitchell v. Ainbinder*, 214 F. App'x 565, 568 (6th Cir. 2007) ("[F]raud require[s] proof of some sort of willful intent to give false testimony.").

Next, consider Kaiser's representation of its QPA as to the six claims. For three of those, Kaiser's EOB did not state whether the offer was its QPA. Although Kaiser later told MET that its QPA was a number lower than its original offer, Providers again only speculate that Kaiser misstated its QPA at the outset. *See U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (allegations that "amount to nothing more than speculation" "fail to satisfy Rule 9(b)"). And even assuming Kaiser did so, Providers allege no facts supporting an inference that Kaiser's action was intentional.[5]

For the other three claims, Kaiser allegedly told Providers that its initial offer was its QPA, but then told MET that its QPA was a lower

---

[5] *See Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir. 1982) (explaining that only "intentionally giving a false statement" constitutes fraud); *see also Nat'l Cas. Co.*, 430 F.3d at 499 (only "intentional malfeasance" justifies vacatur).

number. But Providers allege nothing to show that this was anything other than an inadvertent error, as opposed to an intentional scheme to mislead about its QPA.[6] Because Providers' allegations are consistent with either scenario, they fail to meet the Rule 9(b) pleading standard. *See United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 897 (5th Cir. 2020) (per curiam) ("A claim is merely conceivable and not plausible if the facts pleaded are consistent with both the claimed misconduct and a legal and obvious alternative explanation." (cleaned up)).

For similar reasons, Providers fail to plead Aetna and Kaiser procured the IDR awards through "undue means." Their allegations do not plausibly suggest Aetna or Kaiser engaged in "behavior that is immoral if not illegal." *A.G. Edwards & Sons,* 967 F.2d at 1403; *see also Am. Postal Workers Union, AFL–CIO v. U.S. Postal Serv.*, 52 F.3d 359, 362 (D.C. Cir. 1995) (explaining "undue means . . . is equivalent in gravity to corruption or fraud, such as a physical threat to an arbitrator"); *PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship,* 187 F.3d 988, 991 (8th Cir. 1999) ("[C]ircuits have uniformly construed the term undue means as requiring proof of intentional misconduct.").

In sum, because Providers have not "state[d] with particularity the circumstances constituting fraud" to trigger review under the pertinent

---

[6] *See U.S. ex rel. Digit. Healthcare, Inc. v. Affiliated Comput. Servs., Inc.*, 778 F. Supp. 2d 37, 50 (D.D.C. 2011) (noting distinction between inadvertent errors and fraud); *see also Iqbal*, 556 U.S. at 681 (plaintiff fails to "plausibly establish" theory where "more likely explanation[ ]" exists).

provision of the NSA, *see* Fed. R. Civ. P. 9(b), the district court did not err in dismissing their claims.

IV

Finally, we consider whether the district court erred in denying MET's claim of arbitral immunity.

Recall that MET is the CIDRE chosen to make the award determinations for all payment disputes underlying this appeal. Providers sued MET to obtain a remedy if MET's awards were, in fact, vacated. Citing arbitral immunity, MET moved to dismiss Providers' suits, which the district court rejected on the grounds that the NSA does not call IDRs arbitrations and does not call CIDREs arbitrators.

MET argues that because it is a quasi-judicial entity that functions like an arbitrator, it is entitled to the immunity from suit normally enjoyed by arbitrators. We agree.

"Because an arbitrator's role is functionally equivalent to a judge's role, courts of appeals have uniformly extended judicial and quasi-judicial immunity to arbitrators." *New England Cleaning Servs., Inc. v. Am. Arb. Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999) (quoting *Olson v. Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381, 382–83 (8th Cir. 1996)). "[A]rbitral immunity is essential to protect decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants." *Ibid.*

Like judges and arbitrators, CIDREs are neutral arbiters of payment disputes with no stake in the underlying controversy. They receive competing offers for payment, consider information supporting the offers, and then choose one of the offers, which is binding on the providers and insurers. 42 U.S.C. § 300gg-112(b)(4), (b)(5). CIDREs, in sum, function more or less exactly like arbitrators.

It is true that the NSA does not refer to CIDREs as "arbitrators," nor does it call the IDR process "arbitration." That is not determinative, however. What matters in assessing whether an official has immunity is his function, not his title. *See Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985) ("[I]n general our cases have followed a functional approach to immunity law. Our cases clearly indicate that immunity analysis rests on functional categories, not on the status of the defendant." (cleaned up)).

Additionally, Providers and MET both point out that there is no need to name CIDREs as parties because CIDREs must accept remand orders in the event that a court determines an IDR determination should be vacated. That is of course true (and no one argues to the contrary). If a federal court determines an IDR award must be vacated under the relevant NSA provisions, the awarding CIDRE must vacate the award on remand. *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 511 (2001) ("Even when the arbitrator's award may properly be vacated, the appropriate remedy is to remand the case for further arbitration proceedings.").

We conclude MET is protected by arbitral immunity for its role in the IDR process and the district court erred by ruling otherwise.

V

Accordingly, we AFFIRM the district court's order dismissing Guardian Flight, CALSTAR, and REACH's claims against Aetna and Kaiser.

We REVERSE the district court's order denying MET's motion to dismiss, and REMAND with the direction that Guardian Flight, CALSTAR, and REACH's claims against MET be dismissed.